**WEST JORDAN, a municipal corporation, Plaintiff,**

v.

**DEPARTMENT OF EMPLOYMENT SECURITY, Defendant.**

No. 17880.

Supreme Court of Utah.

Oct. 19, 1982.

Stephen G. Homer, West Jordan, for plaintiff.

David L. Wilkinson, Atty. Gen., Floyd G. Astin, Asst. Atty. Gen., K. Allan Zabel, Salt Lake City, for defendant.

OAKS, Justice:

■ This appeal concerns whether a terminated employee of a political subdivision is entitled to receive unemployment compensation benefits for any portion of the time equivalent to the "severance pay" included in her final check.

After three and one-half months' employment, the employee was terminated March 13, 1981, for inability to do her job. Two weeks' severance pay was included with her final check. She applied for and received $80 unemployment compensation benefits for the period from March 15 until she began other employment on March 23. The terminating employer is a political subdivision that has elected to reimburse the Department for the unemployment benefits paid to its former employees rather than to make contributions to the fund on the basis of experience factors and total payroll. U.C.A., 1953, § 35–4–8.5(a). The employer challenged the employee's eligibility for benefits, the appeal referee ruled for the employee, the Commission's board of review affirmed his decision, and the employer brought this petition for review.

Both plaintiff and defendant in this Court agree that most appellate courts ruling on this question under statutes similar to Utah's have denied unemployment benefits. *E.g., Globe-Democrat Publishing Co. v. Industrial Commission,* Mo.App., 301 S.W.2d 846 (1957); *Schenley Distillers, Inc. v. Review Board,* 123 Ind.App. 508, 112 N.E.2d 299 (1953); cases cited in *Annot.,* 93 A.L.R.2d 1319, §§ 10–12 (1964). We also reach that result.

Under the applicable provision of our statutes, a person is ineligible for unem-

ployment compensation benefits "[f]or any week with respect to which he ... has received ... remuneration in the form of: ... a dismissal or separation payment ...." U.C.A., 1953, § 35–4–5(h). The board of review held this statute inapplicable to this case on the basis of its Precedent Decision No. 71–BR–568, summarized below. That decision has never been reviewed by this Court, but it has been reviewed and criticized by the Legislative Auditor [1] and the Legislative General Counsel.[2]

■ We review the Commission's interpretative rules with due regard for the Commission's duty to interpret its enabling legislation and its authority to adopt the administrative rules and regulations necessary to implement it. *Utah Hotel Co. v. Industrial Commission,* 107 Utah 24, 30, 151 P.2d 467, 470 (1944). As we said in *McPhie v. Industrial Commission,* Utah, 567 P.2d 153, 155 (1977), "The time honored rule of law is that the construction of statutes by governmental agencies charged with their administration should be given considerable weight ...." Nevertheless, as we have frequently stressed, such agency decisions are still subject to judicial review and will be reversed where they are inconsistent with the governing legislation or the decisions of this Court. *Northwest Carriers, Inc. v. Industrial Commission,* Utah, 639 P.2d 138 (1981); *McPhie v. Industrial Commission, supra; Utah Hotel Co. v. Industrial Commission,* 107 Utah at 32, 151 P.2d at 471. *See generally,* 2 Davis, *Administrative Law Treatise* §§ 7:8–7:11 (2d ed. 1979).

In Precedent Decision 71–BR–568 (issued in 1971), which ordered the payment of unemployment benefits notwithstanding lump-sum severance payments by an employer whose status was not identified, the Commission gave this interpretation of § 35–4–5(h) (then codified at U.C.A., 1953, § 35–4–5(j)):

---

1. Office of the Legislative Auditor General, State of Utah, A Performance Audit of the Unemployment Insurance Program in Utah, May, 1978, pp. 47–50.

2. Office of Legislative General Counsel, State of Utah, Opinion No. 78–013.

Obviously the Legislature's intent was to avoid the payment of an unemployment compensation benefit *for any week for which the claimant also received wages* equal to or in excess of his weekly benefit amount.

*In our opinion any payment must, in order to disqualify, meet all the tests applicable to wages.*

[1] The payment must be for a week or a pay period and must appear on the employer's records as such;

[2] it must be based on an existing employer-employee relationship;

[3] it must be subsequently available to the employee as a base period wage for the week or period for which it is paid; and

[4] it must be subject to employer contributions for the calendar quarter in which the week for which it is paid occurs. [Emphasis added.]

In the case before us, the Commission relied on noncompliance with requirements 1, 2, and 3. The appeal referee's findings of fact included the following:

This [two weeks' severance pay] was not assigned to a specific period and the claimant accrued no employee benefits during this period . . . .

She was not carried on their payroll as an employee beyond [March 13, 1980] . . . .

Therefore, the referee concluded, the severance pay "would be assignable to the week ended March 14, 1981" and would not disqualify the employee from benefits for the period after her termination. The board of review agreed, and also relied in part on noncompliance with requirement 3. If supported by evidence of any substance, these findings are conclusive as to matters of fact, *Taylor v. Department of Employment Security,* Utah, 647 P.2d 1 (1982), but the legal premises upon which they are based are subject to our review for error. § 35–4–10(i).

We deem it significant that in describing the severance payment that would make the recipient ineligible for unemployment benefits, § 35–4–5(h) refers to "remunera-tion," but Precedent Decision 71–BR–568 refers to "wages." This reference is critical, as is evident in the Decision's preamble and in its requirement 1: In order to make the recipient ineligible, the severance payment must "meet all the tests applicable to wages," including [1] "The payment must be for a week or a pay period and must appear on the employer's records as such." These requirements are very exacting, both as to form and substance, and significantly reduce the circumstances where severance payments will disqualify the recipient.

In contrast, all the statute requires to make the recipient ineligible for unemployment benefits during a comparable period is that he or she has received "remuneration in the form of: . . . a dismissal or separation payment," and that the remuneration relates to the period of time following the termination of employment rather than the period preceding it (as, for example, by compensating the employee with a bonus for services rendered or a payment for accrued vacation or unused sick leave). (If a severance payment relates to the period following termination, the period of disqualification can be evident from the description of the payment—like the "two weeks severance pay" in this case—or, in the case of a lump-sum payment, can be approximated by reference to the employee's most recent rate of pay.)

■ Since the preamble and requirement 1 of the Precedent Decision have the effect of significantly diluting the scope of the disqualification the Legislature enacted in the governing statute, § 35–4–5(h), they are invalid as a matter of law.

■ The employer also attacks requirement 2 as at odds with the nature of severance pay. An employer-employee relationship may be "existing" at the time the payment is made, but to require that relationship to continue for the duration of the period to which it relates would frustrate its purpose. Yet that is the construction the Commission put upon requirement 2 when it ruled that the employee in Precedent Decision 71–BR–568 was not disquali-

fied because that lump-sum severance payment "cleared the record of any further employer-employee relationship as of that date." As so interpreted, and as applied in this case, requirement 2 would make it difficult or impossible for any severance payment to produce the ineligibility enacted in § 35–4–5(h). The ruling is therefore invalid as contrary to the evident purpose of the statute.

The Commission also relied on noncompliance with requirement 3. As to most employers, requirements 3 and 4 serve the obvious purpose of assuring that severance pay remuneration will be counted in determining the amount the employer must contribute to the fund for payment of benefits during the period of eligibility. That is a rational interpretation of the statute as to employer contributions. But as to employers like the plaintiff, who have elected coverage on a reimbursement basis and who therefore make no contributions to the fund, noncompliance with requirements 3 and 4 would seem to be irrelevant. Unless the Commission can relate requirements 3 and 4 to some other permissible purpose, reliance on those requirements as a basis to ignore a reimbursing employer's severance payment would be so arbitrary in respect to the apparent statutory purpose as to be outside the permissible range of the Commission's discretion.

What this Court said in the context of workmen's compensation benefits is also true of unemployment compensation benefits for employees who have received employer severance payments: "[T]here is no statutory purpose to be served in allowing what is essentially a double recovery for the same injury." *David v. Industrial Commission,* Utah, 649 P.2d 82, 84 (1982). The Commission erred in applying Precedent Decision 71–BR–568 to hold the employee eligible for unemployment benefits in this case. The Commission's order is reversed.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.