SALT LAKE CITY CORPORATION,
Plaintiff and Respondent,

v.

Evelyn CONFER and The Industrial
Commission of Utah, Defendants
and Appellants.

No. 18707.

Supreme Court of Utah.

Oct. 12, 1983.

Walter Axelgard and George Sutton, Salt Lake City, for defendants and appellants.

Walter R. Miller, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

This is a case of first impression on the meaning of "handicap" in the Utah Anti-Discrimination Act, U.C.A., 1953, § 34–35–1, *et seq.* Finding that Salt Lake City Corporation had discriminated against Evelyn Confer, an applicant for employment, the Industrial Commission awarded her reinstatement plus lost wages for a period of twenty months (less her other earnings during that time) and attorney fees. On petition for a trial de novo, the district court granted summary judgment for the City. Confer pursues this appeal. We reverse and remand for further proceedings in the Commission.

The Anti-Discrimination Act was adopted in 1969. It forbade employment discrimination on the basis of race, color, sex, religion,

ancestry or national origin, except where those criteria were "a bona fide occupational qualification reasonably necessary to the normal operation of that particular business" or essential to its "motif, culture or atmosphere." § 34–35–6. The Act created an antidiscrimination division within the Industrial Commission, consisting of three members of the Commission. §§ 34–35–3 & –4. The antidiscrimination division was given power to administer the Act and (on behalf of the Commission) to adjudicate complaints, subject to a "trial de novo" in the district court. §§ 34–35–5, –7, & –8.

In 1979, the Legislature amended the Act by inserting the word "handicap" as a forbidden basis of discrimination and as a permitted criterion of bona fide occupational qualification. A prohibition against employment discrimination on the basis of "handicap" poses difficult conceptual and definitional problems, especially where, as here, the prohibition is simply inserted into a law drafted to forbid discrimination on other bases that are qualitatively different from "handicap." "Handicap" is not self-defining, and if defined very broadly could encompass some characteristics that might be legitimate criteria for some kinds of employment decisions. In such circumstances, a comprehensive definition is critical.

■■■ The 1979 amendment provides this definition of handicap:

"Handicap" means a physical or mental impairment which substantially limits one or more major life activity [sic].

§ 34–35–2(14). There is no published legislative history to disclose what the lawmak-

ers intended by this one-word insert and its accompanying cryptic definition. The complexity of the subject and the difficulty of adjudicating controversies on the basis of such terse legislation are evident from the record in this case.[1]

On the basis of his study of x-rays, Evelyn Confer's physician testified that she has a "mild grade 1 [the least serious grade] spondylolysis," which, in her case, is "an anomaly of the fifth lumbar vertebra, being forward on the spinal column approximately ⅜th of an inch." This condition is caused by "the failure of fusion at the back of the vertebrae, and is usually considered to be congenital." Confer testified that during her entire lifetime, including prior employment requiring stressful physical activity and heavy lifting, and including the period of two normal pregnancies, she had never experienced any pain, discomfort, or other symptoms from her back. Prior to the physical examination incident to this application for employment, she was completely unaware of her spondylolysis.

Confer applied for a job as an operations officer at the Salt Lake International Airport. Operations officers handle a variety of duties in and around the airport, including airport security. They are often the first officials to arrive at a scene of potential trouble. They carry nightsticks, but not firearms. Our statutes classify "[a]ny officer of the security unit of any airport" operated by the city as a "[c]ategory III peace officer" with "total peace officer authority when on duty," § 77–1–3(5)(c), but the Commission in this case found that operations officers "do not have a law enforcement officer's authority to make ar-

1. In considering the record, including the facts before the Commission in this case, we reject the City's argument that this Court is limited to a review of the facts set out in the pleadings in the district court. The Act specifies that when a party petitions for a trial de novo in the district court the "entire case file before the commission" shall be filed in that court. § 34–35–8(5). The purpose of that requirement must be to permit the district court to conduct its trial de novo on the basis of the record before the Commission. Cf. Pledger v. Cox, Utah, 626 P.2d 415 (1981). This would not prevent the district court from adding to

that record by receiving additional evidence if it elected to do so.

In this case, the record of the proceedings before the Commission was filed in the district court. As the fact-finder in this equitable matter, the district court had the option of affirming the Commission's findings, as was done in *Beehive Medical Elecs. v. Industrial Comm'n*, Utah, 583 P.2d 53, 55, 57 (1978), or of making its own findings. That same record is before this Court for purposes of our review. The City's motion to strike Confer's briefs for reliance on nonrecord facts is therefore denied.

rests." It found that incidents involving a resisting individual are, wherever possible, handled by more than one operations officer or by "regular police officers."

Salt Lake City, through its Health Department and its Personnel Department, has a policy that all persons with any degree of spondylolysis are disqualified from employment in "arduous labor," which includes laborers, police officers, and fire fighters. It applied that policy to airport operations officers in this case. There is no claim that this application singled Confer out for different treatment than would have been accorded any other applicant for this position. The purpose of the City's policy and its application to this position was "to reduce the possibility of employment compensation and disability claims and to minimize the possibility of disruption in the Airport Operations Officers force at the airport."

The fact that Confer was physically fit to perform all of the functions of the job description of airport operations officer is uncontested.[2] Also uncontested is the fact that Confer commenced employment on May 12, 1980, and was terminated on that same day, before the completion of her shift, immediately upon her supervisor's receiving the report of the required physical examination, and solely for that reason. She filed her complaint of discrimination with the Commission on June 9, 1980.

■ The only issue on this appeal is whether the City's application of its policy to Confer constituted a violation of the Anti-Discrimination Act's prohibition against discrimination on the basis of handicap. § 34–35–6(1). This issue turns on the meaning of the definition of handicap, § 34–35–2(14), quoted earlier. To prevail, Confer must show that her spondylolysis is (1) an "impairment" and (2) that it "sub-stantially limits" a "major life activity." Those issues will be treated in that order.

1. *Impairment* can be defined narrowly or broadly. The City's principal argument advocates the narrow definition, under which a person is impaired only if suffering some serious disability in a bodily function. *E.g., American National Insurance Co. v. Fair Employment Practice Commission,* 114 Cal.App.3d 1008, 170 Cal.Rptr. 887 (1981); *Lyons v. Heritage House Restaurants, Inc.,* 89 Ill.App.2d 163, 432 N.E.2d 270 (1982). The district court adopted this definition and, since Confer admittedly is not functionally impaired, gave judgment for the City as a matter of law.

■ Confer argues for the broader definition of impairment adopted by the Commission in this case in reliance upon administrative and judicial construction of a comparable provision in the Rehabilitation Act of 1973, 29 U.S.C. § 706(7)(B) (Supp. III 1979). Under the Commission's definition, "impairment" is "any condition which weakens, diminishes, restricts, or otherwise damages an individual's health or physical or mental activity."[3] This definition was applied by the court in *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1097–98 (D.Hawaii 1980), on which the Commission relied, and is there stated to be taken from Webster's Third International Dictionary (unabridged, 1967). *Id.* at 1097. *See also Philadelphia Electric Co. v. Pennsylvania Human Relations Commission,* Pa.Cmwlth., 448 A.2d 701, 704 n. 4, 706 (1982). Confer could clearly be found impaired under this definition. Indeed, the fact that a person with spondylolysis was "weaken[ed]" in physical activity was the reason for the policy the City followed the declining to hire her.

---

**2.** All of the medical experts agreed that "an individual's susceptibility to injury as the result of an existing spondylolysis varied according to the extent to which the condition was present and symptomatic, and that [Confer] had the lowest possible susceptibility and was asymptomatic."

**3.** The definition in the federal regulation implementing the Rehabilitation Act of 1973 is to the same general effect: " 'Physical ... impairment' means ... any physiological disorder or condition ... affecting one or more of the following body systems: Neurological; musculoskeletal [etc.]...." 29 C.F.R. § 1613.702(b) (1981).

The fine briefs filed by the parties in this case contain ample authorities for the adoption of either definition of "impairment." Neither the words of the legislation nor its legislative history gives any basis for preferring one over another. In that circumstance, we deem it preferable to defer to the interpretation adopted by the administrative body to which the Legislature committed the administration of this Act. While the Commission's interpretation of this word is not the only reasonable interpretation that could have been adopted, it is well within the limits of reasonableness that confine judicial review of administrative decisions of this nature. *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601, 609–12 (1983). Because the district court held to the contrary as a matter of law, its judgment must be reversed. For reasons explained below, there are remaining issues of fact, and the case must therefore be remanded for further proceedings.

2. We next interpret the remaining elements of the statutory definition for the guidance of the trier of fact on remand.

If the Legislature contemplated a broad definition of the term "impairment," as the Commission has held, it clearly assigned two major qualifications with the words *substantially limits* and *major life activity.* Each limitation qualifies the types of "impairment" for which discrimination is forbidden, and each includes a word of magnification. The Legislature's apparent purpose was to prevent every termination or denial of employment on the basis of a physical or mental characteristic ("impairment") from constituting a prima facie case of discrimination on the basis of handicap.

Most or all persons have some physical or mental deviations from a norm or from personal or employer aspirations. Considerations of height, weight, sensory abilities, speech, pulse rate, blood pressure, and a whole variety of measures of mental ability are only a few characteristics whose variations can be deemed "impairments" under the broad definition discussed earlier. If the Legislature had intended that all employer decisions based on any such impairments would be forbidden as discrimination against the handicapped (unless justified as a bona fide occupational qualification), the statutory definition should have stopped with the word "impairment." Instead, the definition was limited to those impairments that "substantially" limit a "major life activity." Because of these limiting words, an impairment must have some functional significance to the individual before an employment decision based on that impairment can be said to be discrimination on the basis of handicap (unless shown to be a bona fide occupational qualification). In most cases, the major life activity that is substantially limited will be a physical function of a general nature, such as seeing or hearing.[4] But this case is different and exceptional.

In this case, the functional significance cited by Confer (and adopted by the Commission) as a substantially limited major life activity is Confer's inability to obtain her desired employment. Thus, the Commission ruled:

[I]f a person is denied employment because of a perceived medical impairment, the party has been substantially limited in one or more major life activities, namely, that of pursuing employment opportunities desired by that person.

However, in the context of this statute, the privilege of working *in one particular job for one particular employer* cannot be a "major life activity." If it were, the employer action complained of in a job discrimination case would always satisfy the statutory qualifications, and the disputed language would be meaningless. *Cf. Pennsylvania State Police v. Pennsylvania Human Relations Commission,* 72 Pa.Cmwlth. 520, 457 A.2d 584, 586 n. 2, 589 & n. 12 (1983). At the opposite extreme, employment itself is surely a major life activity, so

---

4. Thus, the federal regulations contain the following definition: " 'Major life activities' means functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c) (1981).

that any impairment which precluded working altogether would surely fit this part of the statutory definition. *See* note 4 *supra.* But neither of those extremes fits the facts of this case.

The issue under this portion of the statute is whether an impairment that prevents Confer from being employed in one particular type of job—arduous employment, including airport operations officer—for one particular employer—Salt Lake City—"substantially limits" her in a "major life activity."

■ Whether employment of a particular type in a particular industry is a "major life activity" is a question of fact, to be resolved upon consideration of the nature of the desired employment by comparison with related types of employment in the same or other industries and the reasons for the applicant's preference for the job in question over all others. In this case, for example, it is far from obvious that the narrow category of employment as an airport operations officer is a major life activity. In the context of this line of work, the statutory reference to "major life activity" may connote a type of employment as broad as all security officers, or, to rely on another characteristic of the job in question, it may connote all airport terminal employees other than air traffic controllers. The Commission should have identified the category of employment that qualifies as a "major life activity" for purposes of § 34–35–2(14).

■ The other statutory qualification, "substantially limits," is also a question of fact. It should be resolved by determining the extent of employment opportunities in the statutory category ("major life activity") in the area reasonably accessible to the employee. From this, the Commission can determine whether the employer policy or action at issue has substantially limited the employee in the "major life activity" of obtaining employment in a particular category of employment.

This is the inquiry discussed by the court in *E.E. Black, Ltd. v. Marshall, supra,* a case relied on by Confer. There, the court rejected the interpretation that an impairment "substantially limits" an employee whenever it is "a current bar to the employment of one's choice . . . which the individual is currently capable of performing." 497 F.Supp. at 1099. That interpretation, the court held, ignored the word "substantial." If Congress had that interpretation in mind, it would have omitted that word and barred any discrimination on the basis of any handicap that "in any way limits one or more of such person's major life activities." *Id.* Instead, the court held, the trier of fact should look, on a case-by-case basis, to "the number of types of jobs from which the impaired individual is disqualified." *Id.* at 1100. The court concluded this point as follows:

> The Court is left with the question of, considering the entire spectrum of available jobs, how broad must the disqualification be in order to even possibly qualify the individual as having a substantial handicap to employment. . . . If an individual were disqualified from the same or similar jobs offered by employers throughout the area to which he had reasonable access, then his impairment or perceived impairment would have to be considered as resulting in a substantial handicap to employment. However, what is to be considered a similar job must be made on a case-by-case basis, and may differ among individuals with similar impairments, depending on their training, education, etc.
>
> Certainly, if an applicant were disqualified from an entire field, there would be a substantial handicap to employment. But, questions as to subfields and the like must be answered on a case-by-case basis, after examining all the factors discussed above.

497 F.Supp. at 1101–02. We concur in that interpretation.

■ 3. The Commission concluded that the City's policy of denying employment as airport operations officers solely on the basis of a spondylolysis did not qualify as a bona fide occupational qualification reasonably necessary to the operations of the airport. In view of the mild nature of Con-

fer's impairment, the record amply supports that conclusion as to the case before the Commission. Since the City has not argued the point in this Court, we express no opinion on the broader question of whether an employer could lawfully deny employment to an otherwise qualified handicapped individual because of his or her substantially increased risk of future injury or disability in the employment in question. *Compare Bentivegna v. United States Department of Labor,* 694 F.2d 619, 622–23 n. 3 (9th Cir. 1982), with *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. at 1104.

In sum, the district court's entry of judgment for the City as a matter of law was inappropriate because it was based on a narrow definition of "impairment" in opposition to the Commission's permissible adoption of a broader definition. The case must be remanded for trial of issues of fact, as Confer requests. However, because those issues are matters that require the expert judgment of the Commission, the further proceedings should be conducted in the Commission. The district court's judgment is reversed, and the case is remanded to the district court with directions to remand the case to the Commission for further proceedings consistent with this opinion. *So ordered.*

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.