UNIVERSITY OF UTAH, Plaintiff
and Respondent,

v.

INDUSTRIAL COMMISSION OF UTAH
and Paula McQuown, Defendants
and Appellants.

No. 20692.

Supreme Court of Utah.

April 16, 1987.

David E. Leta, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Atty. Gen., William T. Evans, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Appellant Paula McQuown seeks reversal of an order of the trial court denying her claim for relief under the Utah Anti-Discrimination Act, U.C.A., 1953, §§ 34-35-1 to -8 (Supp.1986).

In 1980, appellant filed a complaint with the Utah Anti-Discrimination Division of the Industrial Commission of Utah against the University of Utah, specifically its public television station, KUED, alleging sex and age discrimination and illegal retaliation in violation of the Utah Anti-Discrimination Act, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination and Employment Act of 1967, 29 U.S.C. § 621 et seq. Her original complaint was brought because she had not been promoted to a position for which someone else was hired in October of 1980. In fact, under the reorganization structured by her supervisor, appellant was actually demoted to a position of reduced responsibilities. Her complaint was later expanded to include allegations of retaliation, in addition to further sex and age discrimination, when she was terminated by KUED in January of 1982.

An administrative law judge found in favor of appellant on the age and retaliation claims and in favor of the University on the sex discrimination charge. The Industrial Commission adopted the findings, conclusions, and recommendations of the administrative law judge. The University of Utah sought judicial review in the district court pursuant to U.C.A., 1953, § 34-35-8. Following a "trial de novo," the district court found no evidence of either sex or age discrimination or retaliation and set aside the order of the Commission. Appellant brings this appeal.

Appellant was hired by KUED on September 20, 1971, as a receptionist. She was promoted to the position of promotion director in 1973 and later promoted to the position of manager of publicity and public relations in 1979. Although there is some dispute as to when she received her first performance evaluation, the record shows that she was placed on probation in 1976 and in 1977 was criticized for her bad atti-

tude toward her supervisor and told that if it did not improve, she would have to seek other employment. Once again, in 1978, her supervisor indicated that her attitude and interaction with co-workers needed improvement.

In September of 1979, Fred Esplin was hired as the director of marketing of KUED. He was at that time under forty years of age. There were three management positions in the marketing department: Jonathan Sack, manager of fund raising; Norma Tharp, manager of advertising and promotion; and appellant, manager of publicity and public relations. In his first evaluation of these three employees in January of 1980, he rated all of them as doing "an effective job." Two months later, he addressed a memo to appellant, expressing his concerns about her performance and giving her a smaller raise than his other employees received. He also enumerated specific areas in which he believed improvement was required and threatened appellant with termination if she failed to improve.

In October of 1980, Esplin reorganized the marketing department, consolidating the three management positions into two. The manager of fund raising remained the same, and the management positions of publicity and public relations and advertising and promotion were combined to create a new position, manager of advertising and public information. Under this reorganization, appellant was "demoted" to the position of coordinator of publicity and public relations, removing some of her responsibilities but maintaining her salary at the same level. Appellant filed her first charge of age and sex discrimination with the Industrial Commission at this time.

Later, Norma Tharp resigned. KUED advertised to fill her position of manager of advertising and public information. Appellant, over forty years of age, applied for the position and, along with other applicants who were not already employed by KUED, was rated as qualified. Although the University of Utah admits having a policy to promote from within, Jeanne Gre-

goire, a woman under forty, was hired from without for the position.

In 1981, Esplin evaluated appellant's performance as "marginal" and "not acceptable," citing her failures to meet deadlines, plan her work, and follow internal policies. That same year, Gregoire, who was then her immediate supervisor, evaluated appellant's performance as marginal and unacceptable, citing her failure to meet deadlines, her failure to take initiative, her failure to perform assigned responsibilities, her failure to communicate with her supervisor, and insubordination. Gregoire began to document appellant's performance. In June 1981, she evaluated appellant as "marginal" and recommended her termination. Appellant was suspended for one day without pay. On January 12, 1982, she was terminated for failure to respond to her responsibilities at KUED.

## I.

■ Appellant first contends that the district court erred in conducting its trial de novo because it did not review the findings of the Industrial Commission as an appellate court, but chose to make its own findings, much like a trial court would do. She argues that the court's proper role should have been limited to a determination of whether the Commission's findings were supported by the evidence. Respondent KUED brought its petition for trial de novo under section 34–35–8, which provides in pertinent part:

(5) The *petition for a trial de novo* shall specify the date of the order and the parties to the proceeding before the commission. Within 15 days after filing the petition the *commission shall file in the district court where the petition has been filed the entire case file before the commission containing the formal complaint, the answer and all other documents and exhibits,* together with a transcript of the hearing before the commission *if any of the parties so require.* The district court upon motion of any party to the proceeding in the district court may order the appearance of new parties and require any of the parties to

file new pleadings or allow any amendment to pleadings, or expedite discovery proceedings.

(6) Upon the *conclusion of a trial de novo in the district court or other proceedings which appropriately dispose of all issues of fact and of law,* the district court shall *enter findings of fact, conclusions of law, and judgment and decree,* which are subject to enforcement upon the application of the commission or any party to the judgment. The parties may waive findings of fact and conclusions of law. The judgment entered in the district court supersedes any order made by the commission.

(Emphasis added.)

Appellant relies on this Court's second interpretation of the phrase "trial de novo" in the case of *Denver & Rio Grande Western Railroad v. Public Service Commission,* 98 Utah 431, 100 P.2d 552 (1940). There, we reasoned that the phrase had at least two interpretations when applied to judicial review of administrative actions:

The expression "trial de novo" has been used with two different meanings: (1) a complete retrial upon new evidence; (2) a trial upon the record made before the lower tribunal. Locally we find an example of the first in section 104–77–4, R.S.U. 1933 covering appeals from the justice court to the district court—the case is tried in the district court as if it originated there. An example of the second meaning we find locally in our treatment of equity appeals wherein we say that the parties are entitled to a trial de novo upon the record.

(Citations omitted.) She asserts that section 34–35–8, if viewed in light of the second meaning, indicates that "trial de novo" means, in this case, a review "of the record." We disagree.

The scope of review provided by the legislature under section 34–35–8 has been before this Court on previous occasions. In *Beehive Medical Electronics v. Industrial Commission,* 583 P.2d 53 (Utah 1978), Belva Alsop brought an action against her employer, Beehive, claiming sex discrimination under the Utah Anti-Dis-

crimination Act. The hearing examiner found in favor of Alsop, and upon review, the Industrial Commission adopted those same findings and conclusions. Beehive sought review in the district court pursuant to section 34–35–8. The court found that Beehive had discriminated against Alsop, and Beehive appealed to this Court. Although not addressing the scope of review per se, Beehive's interpretation of that section elicited the following response from this Court:

> By providing that the District Court shall enter its findings of fact in such cases, the legislature clearly intended that the court, not a jury, be the factfinder on appeal in antidiscrimination cases....

Thus, we viewed the district court as an independent fact finder and *not* as an intermediate appellate court. Similarly, in *Salt Lake City Corp. v. Confer*, 674 P.2d 632 (Utah 1983), we once again noted that the district court's role was one of fact finder and that it could affirm the findings of the Industrial Commission or make its own findings. We noted that the requirement that the "entire case file before the commission" be filed with the district court permits the court to conduct its trial de novo by utilizing the record before the Commission. However, we observed that this "would not prevent the district court from adding to that record if it elected to do' so."

The district court exercised that option in the instant case. The court granted appellant's motion for a trial on the record upon the condition that it could, upon a complete review of the record of the Industrial Commission, elect to add to that record with additional testimony from certain witnesses. The court also ordered that the parties could, upon motion, request to supplement the record with their own additional evidence. After that review of the record, the parties stipulated to calling three witnesses to testify at the trial: Paula McQuown, appellant; Jeanne Gregoire, appellant's supervisor during part of the time in question; and Fred Esplin, who was hired as director of marketing for KUED in the fall of 1980. A trial judge is accorded broad discretion in determining how a trial shall proceed in his or her courtroom. If a trial can be held with expedience, i.e., if the days required for trial can be minimized without any compromise of the rights of the parties, certainly this is beneficial to the interests of judicial economy and resolution of disputes. The district court's procedure here, although falling somewhere between a new trial and a review of the record, was proper.

## II.

Appellant next contends that if the district court was not bound by the findings of the Industrial Commission and properly acted as a trial court, then it should have at least accorded deference to the Commission's findings of fact, conclusions of law, and order. She argues that this case turns on the believability of the witnesses and that only the administrative law judge, who listened to the testimony of fourteen witnesses and allowed the admission of approximately one hundred fifty documents into evidence, was qualified to judge the credibility of the witnesses as to their sincerity, demeanor, and response to questions of counsel. She insists that the district court was clearly disadvantaged in evaluating the cold record and that only the administrative law judge was in a position to evaluate the "intangibles of expression and attitude." She further asserts that the district court was limited to a review of the agency's findings for "reasonableness and rationality." Absent unreasonableness or irrationality, she argues, the district court should have given deference to those findings. We do not agree.

First, as has already been pointed out, the district court was not limited to the cold record but could, under our decision in *Salt Lake City v. Confer, supra,* add to that record which it chose to do. In this case, the three key witnesses were called to testify at the trial. Counsel for both sides posed questions to those three witnesses, as did the court. Under our interpretation of section 34–35–8, the decision of the administrative agency is given greater judicial scrutiny because the reviewing court is

*not* bound by the record, but may supplement the record, create an entirely new record, or elect to do a combination of these, as was done here. It logically follows from the meaning which we have accorded to "trial de novo" in this opinion that the district court make its own findings of fact. The legislature clearly intended that the court be the fact finder on review. Thus, the findings of the Commission are superseded by the findings of the district court, and no particular deference need be given to the former.

■ An examination of the trial court's findings and conclusions leads us to the inevitable determination that they are supported by the evidence. The court made an extensive examination of the record, received additional testimony as agreed between the court and the parties, and made its own findings of fact and conclusions of law. Although interpreting identical evidence, the court reached an opposite conclusion. It substituted its own judgment for that of the Commission as to what the evidence proved. This action was not contrary to the intent of the statute, and the court's findings of ultimate fact are supported by the evidence. Although appellant questions why an employee of ten years would "suddenly" be placed on probation if it was not to get rid of her because she was older than the other employees, the record reflects valid reasons otherwise. Esplin had personal experience working with appellant and was familiar with her work habits. He testified that most of her previous supervisors would not recommend her for the position of manager of advertising and promotion, while the letters of recommendation received in support of Gregoire's application were glowing by comparison. Appellant's statements as to her own achievements at the station are occasionally self-serving and fail to address the concerns expressed by her supervisors. Despite the one-time "superior" rating in a performance evaluation, other evaluations over a ten-year period consistently addressed the problem which confronted Esplin and Gregoire: appellant did not prudently manage her time or her budget. The publication for which she was respon-sible was repeatedly late for mailing and often over budget. The extensive correspondence in her personnel file, as well as additional evaluations, can certainly be viewed as attempts to encourage better performance and lead her into areas in which she was capable of performing at her level of competence. We cannot therefore state that the district court's findings lack support in the record, as there is clearly sufficient evidence to sustain them.

## III.

■ Appellant finally contends that the district court erroneously required her to prove intent as an element of her claim of age discrimination. She argues that all she was required to prove was (1) that she was within the protected age group; (2) that she applied for an available position for which she was qualified; and (3) that she was rejected under circumstances that give rise to the inference of unlawful discrimination, relying upon *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 668, 677 (1973). She points out that she was "over forty" at all times pertinent to this claim, that she applied for the position of manager of advertising and public relations for which she was qualified, and that Jeanne Gregoire, who was under forty and who had significantly less experience than she, was hired for that position. She asserts that she met her burden of proof, creating an inference that she had been discriminated against unlawfully, and that it was then upon KUED to rebut that inference and "articulate some legitimate, nondiscriminatory reason for [her] rejection." *McDonnell, supra.*

We agree that appellant presented a prima facie case of discrimination. However, the burden to rebut the inference of discrimination by producing evidence that appellant was rejected and Gregoire was preferred for a legitimate reason does not require KUED to *persuade* the court that it was actually motivated by these reasons. It is sufficient if its evidence raises a genuine issue of fact as to whether it discriminated against appellant. KUED, acknowl-

edging that Jeanne Gregoire and appellant were both qualified, claimed that Gregoire was better qualified for the position. Previous supervisors of appellant over the years did not give her strong recommendations for the position, while Gregoire was highly recommended. Fred Esplin had personal experience working with appellant and believed that although she was minimally qualified, he preferred to fill that position with someone better qualified. Thus, KUED carried its burden by presenting legitimate reasons for not promoting appellant. Her unwillingness to follow orders, to follow through, and to meet budget limitations as well as deadlines and her inability to work well with others, which may be evident at any age, are legitimate, nondiscriminatory reasons for not promoting her and eventually discharging her.

The burden then shifted back to appellant to prove by a preponderance of the evidence that the legitimate reasons offered by KUED were not its true reasons, but rather a pretext for discrimination. When an employee alleging sex discrimination must prove that the stated reasons of an employer for passing her over were merely a pretext and not the real reason, it is the ultimate burden of persuasion which she must carry. Appellant is correct in her contention that she is not required to establish intent as an element of her prima facie case; however, after her employer raised a genuine issue of fact by adducing legitimate reasons for its action, the burden shifted back to appellant, requiring her to prove that a discriminatory reason was the basis for KUED's decision.

This is the teaching of *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), upon which the district court in the instant case relied in imposing the ultimate burden of proof upon appellant. *Burdine* involved alleged discriminatory treatment of a woman who applied for promotion to a position which was subsequently filled by a male applicant. The woman employee was later terminated in a reduction of staff. The trial court there found that the employer had sufficiently rebutted the employee's claim of gender discrimination in its deci-

sion to terminate her employment. The court of appeals reversed, holding that the employer bears the burden of proving by a preponderance of the evidence the existence of legitimate, nondiscriminatory reasons for the employment action and must also prove by objective evidence that those hired were better qualified than the complaining employee in such an action. The Supreme Court reversed the court of appeals, holding that where the employee has proved a prima facie case of employment discrimination, the employer bears *only* the burden of explaining clearly the nondiscriminatory reasons for its actions. The Court went on to state:

> The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff.
>
> . . . .
>
> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity.

450 U.S. at 253, 254–55, 101 S.Ct. at 1093 (footnotes and citations omitted).

Thus, the Supreme Court determined that the employee has the obligation to

prove that the employer's explanation was not the true reason for the employment decision. This burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." 450 U.S. at 256, 101 S.Ct. at 1095. Here, appellant had the burden to persuade the court that a discriminatory reason more likely motivated KUED than the reasons it proffered or, in the alternative, to discredit its explanation. We find no error in the district court's allocation of the burden of proof.

## IV.

■ The intent of the Utah Anti-Discrimination Act is to prohibit discrimination in employment based on race, color, sex, religion, national origin, age, or handicap. The Act was not intended to override or diminish traditional management decisions, nor does it require an employer to hire an older applicant whose objective qualifications are equal to those of a younger applicant. An employer has the discretion to choose among candidates so long as the decision is not based on unlawful criteria. Although the employee, and even the judge, may believe that the employer *misjudged* the qualifications of the applicants, that does not, without more, subject the employer to liability under the Act.

The judgment of the lower court is affirmed.

HALL, C.J., and STEWART, Associate C.J., concur.

DURHAM, Justice: (concurring).

Although I agree with the meaning the majority has given the phrase "de novo" as it is used in U.C.A., 1953, § 34–35–8 (Supp. 1986), I write separately to note that the term has no intrinsic meaning and to suggest that it would be better to discontinue its use. A clear statutory explanation of the standard of review would be more helpful.

The term "de novo" means "anew, afresh, a second time." *Black's Law Dictionary*, 392 (5th ed. 1979).

"Power to try a case de novo vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court." The sine qua non of a de novo trial as that term is used to describe a retrial of a matter or controversy theretofore tried by another tribunal is the nullification of the judgment or order of the first tribunal and a retrial of the issues on which the judgment or order was founded. When jurisdiction of the second tribunal attaches, the judgment or order of the first tribunal is not merely suspended, but is nullified.

... [The second tribunal] does not merely *review* the judgment of the [first] but tries the issues anew.

*Southern Canal Co. v. State Board of Water Engineers*, 159 Tex. 227, 318 S.W.2d 619, 622 (1958) (citation omitted; emphasis in the original). *See also In re Poole*, 136 Vt. 242, 388 A.2d 422, 424 (1978). An example of a true trial de novo is a retrial of a justice of the peace court case in the circuit court. *See* U.C.A., 1953, § 78–5–14 (Supp.1986). On the other hand, true appellate review involves a review of the record of proceedings in an inferior court by a superior for the correction of error. In section 34–35–8, the legislature has created what appears to be a hybrid form of review which requires the district court to function as both an initial fact finder and a reviewer of error. We have attempted to give some substance to this standard of review. However, it cannot properly be referred to as a "trial de novo."[1]

ZIMMERMAN, J., concurs in the concurring opinion of DURHAM, J.

---

1. Unfortunately, Utah's legislature is not alone in its imprecise use of the term de novo. *See,* *e.g., Hannan v. Good Samaritan Hosp.,* 4 Or. App. 178, 471 P.2d 831 (1970) (discussing an

Oregon procedure calling for a "trial de novo on the record" and creating a strange standard re-

quiring no deference except on issues of credibility).