**David R. WILLIAMS d/b/a Industrial Communications, Petitioner,**

v.

**MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY and Public Service Commission of Utah: Brian T. Stewart, Chairman; Brent H. Cameron, Commissioner; James M. Byrne, Commissioner, Respondents,**

**U S WEST NewVector Group, Inc., Intervenor.**

No. 870219.

Supreme Court of Utah.

Oct. 21, 1988.

Keith E. Taylor, Michael L. Larsen, Salt Lake City, for petitioner.

Ted D. Smith, Salt Lake City, for Mountain States Tel. and Tel. Co.

**23.** Utah Code Ann. § 78–22a–2 (1987).

David L. Stott, Salt Lake City, for Public Service Com'n of Utah.

Gregory B. Monson, Debra J. Moore, William H. Christensen, Salt Lake City, for U S WEST NewVector Group, Inc.

HALL, Chief Justice:

Williams seeks review of a Public Service Commission ("PSC") order deregulating mobile radio telephone service rates in portions of Utah. Williams contends that the PSC's findings are not supported by the record, that they are based upon incompetent hearsay evidence, and that the PSC did not adequately consider the factors listed in Utah Code Ann. § 54–8b–3(2) (1986) in reaching its decision.

In August 1985, Mountain States Telephone & Telegraph Company ("Bell") filed a petition with the PSC seeking, in part, an order deregulating mobile telephone service rates in several Utah communities. Williams, a competitor of Bell's, opposed this requested relief.

Hearings were held in November 1986. Over Williams' objection, the PSC admitted testimony and exhibits of witness Murphy, Bell's only direct witness in support of its petition. Murphy, who was not qualified as an expert, admitted that his testimony and exhibits contained facts obtained from a third-party source about which he had no personal knowledge. Two witnesses presented by the Utah Division of Public Utilities, Capshaw and Compton, admitted that portions of their testimony were based upon Murphy's testimony.

In April 1987, the PSC issued its report and order stating:

1. Effective immediately, regulated suppliers of mobile telephone service in the following cities and surrounding areas, may remove rate levels from their tariffs:

| | |
|---|---|
| Moab | Monticello |
| Ogden | Salt Lake City |
| Provo | Price |
| Vernal | |

Such suppliers need not seek prior approval of changes in rates for mobile telephone service.

2. Rate levels for rural radio service shall continue to be tariffed and subject to all regulatory requirements of title 54.

Williams' petition for rehearing was subsequently denied, and he initiated this proceeding.

Williams first contends that the PSC failed to follow the procedures expressly established by the legislature for partially or wholly exempting public telecommunications service providers from regulation. As support, Williams cites Utah Code Ann. § 54–8b–3 (1986). That section provides in part:

(1) The commission is vested with power and jurisdiction to partially or wholly exempt from any requirement of this title any telecommunications corporation or public telecommunications service in this state.

(2) The commission, on its own initiative or in response to an application by a telecommunications corporation or a user of a public telecommunications service, may, after public notice and an opportunity for a hearing, make findings and issue an order specifying its requirements, terms, and conditions exempting any telecommunications corporation or any public telecommunications service from any requirement of this title either for a specific geographic area or in the entire state *if the commission finds* that the telecommunications corporation or service is subject to effective competition, that customers of the telecommunications corporation or service have reasonably available alternatives, and that the telecommunications corporation or service does not serve a captive customer base, and if such exemption is in the public interest of the citizens of the state. *In determining whether to exempt any telecommunications corporation or public telecommunications service from any requirement of this title, the commission shall consider all relevant factors including, but not limited to:* (a) the number of other providers offering similar services; (b) the intrastate market power and market share within the state of Utah of the telecommunications corporation requesting an

exemption; (c) the intrastate market power and market share of other providers; (d) the existence of other providers to make functionally equivalent services readily available at competitive rates, terms, and conditions; (e) the effect of exemption on the regulated revenue requirements of the telecommunications corporation requesting an exemption; (f) the ease of entry of other providers into the marketplace; (g) the overall impact of exemption on the public interest; (h) the integrity of all service providers in the proposed market; (i) the cost of providing such service; (j) the economic impact on existing telecommunications corporations; and (k) whether competition will promote the provision of adequate services at just and reasonable rates.

(Emphasis added.)

Williams argues that since the PSC refused to require and/or accept competent evidence concerning several of these relevant factors, the PSC could not have properly "considered" them, and therefore its findings and order are invalid. Specifically, Williams claims that the PSC failed to consider at least the following: (1) the existence of other providers to make functionally equivalent services readily available at competitive rates, terms, and conditions; (2) the effect of exemption on the regulated revenue requirements of the telecommunications corporation requesting an exemption; (3) the economic impact on existing telecommunications corporations; and (4) the cost of providing services. Williams maintains that the PSC must consider each of the legislatively required factors and that "commission expertise" alone is an inadequate basis upon which to "consider" them.

In response, the PSC in its "Report and Order" and respondents in their brief indicate that the requirements of section 54–8b–3(2) are satisfied when the PSC merely considers whether one or more of the named factors are relevant to an issue before it or when the PSC determines that presentation of evidence regarding a specific statutory factor is, in its own view, un-

necessary. In this regard, the PSC in its "Report and Order" stated:

By expressly requiring findings as to the four, but merely indicating that the other [subsections (a) through (k) factors] shall be considered, the Legislature is indicating its intent that the latter are to serve as a general guide of relevant questions to examine but is not necessarily indicating that all of the criteria are necessarily relevant in a given case. . . .

Furthermore, examination of the additional [(a) through (k)] factors demonstrates that it would be virtually impossible to reduce some of them to factual testimony or to precise factual conclusions. Many of them are obviously general policy consideration [sic] that cannot be expressed in precise factual terms.

Additionally, respondents now claim:

It is apparent in reviewing paragraph 15.g of the Report and Order in light of the Commission's interpretation of the statute that the Commission concluded that [an (a) through (k)] factor can be first considered for its relevancy in a particular case. If upon such consideration it is determined that the factor is irrelevant, the Commission need not receive specific substantive evidence on the factor in order to find that sufficient competition exists to grant a full or partial exemption from regulation.

. . . .

Here, the Commission considered the subject of the cost of providing mobile telephone service pursuant to Section 54–8b–3(2)(i), but reasoned that evidence of specific costs was not necessary. The Commission interpreted Section 54–8b–3(2) to mean that it must consider the enumerated issues in reaching its decision, but that it did not need to receive specific evidence on each enumerated [(a) through (k)] factor. [Citation to the record omitted.] The Commission's technical expertise concerning the relationship between competitiveness and costs in the mobile telephone industry merits deference from this court.

When reviewing PSC decisions, we generally give them no deference on ques-

tions of general law and the greatest deference on questions of basic fact. Between these extremes lie "mixed questions of law and fact" which include "commission interpretations of the operative provisions of the statutory law it is empowered to administer." [1] As we noted in *Bayle v. Board of Review of Industrial Commission*.[2] "The construction of a statute by the governmental agency charged with its administration will be given considerable weight by this Court. However, that construction is still subject to judicial review for consistency with the governing legislation and prior decisions of this Court." [3]

We do not defer to agency decisions when they are unreasonable or irrational or if the agency has acted in an arbitrary and capricious manner.[4] When an agency decision is contrary to law in that it fails to meet the criteria of statutory construction generally followed, it is deemed arbitrary and capricious.[5] Reasonableness, on the other hand, is determined "with reference to the specific terms of the underlying legislation." [6]

■ The position taken by the PSC and the respondents in this case is unreasonable in that it is contrary to the plain language of the statute. The legislature states that "the commission *shall* consider all *relevant* factors *including*, but not limited to: [factors (a) through (k)]." The intent of the legislature is clear; factors (a) through (k) are the minimum factors the commission shall consider. Other factors beyond (a) through (k) shall be considered if relevant. The PSC may not arbitrarily disregard legislative provisions at its convenience, just as it may not rewrite the statutory requirements of section 54–8b–3(2) by declaring "irrelevant" those factors which the legislature expressly deems rele-

vant and instructs the PSC to at least consider. The claim that the PSC may "consider" the enumerated issues in reaching its decision but that it need not receive evidence on each statutory factor contradicts the plain language and object of the statute, and in making such determination, the PSC has exceeded its authority in this case.

■ Similarly, respondents' argument that this Court should give deference to the PSC's expertise in lieu of requiring the PSC to request and accept evidence concerning each of the legislatively mandated factors is also without merit. As this Court stated in *Mountain States Legal Foundation v. Utah Public Service Commission:* [7]

[I]f the Commission has not acted within the powers delegated to it by the Legislature, or there is no legal basis in fact for the findings of the Commission, or the findings do not rationally support proper legal conclusions, an order is contrary to law and must be set aside. Commission expertise alone is not an adequate basis upon which ultimate findings as to reasonableness of rates and classifications of customers may be based.[8]

Although *Mountain States* dealt with a PSC factual determination to which we generally give great deference, the rationale is equally applicable in this instance where the question is one of "mixed law and fact," to which we give PSC determinations less deference. We will not defer to commission expertise when it acts outside the bounds the legislature dictates. The legislature, in enacting the subject statute, established a clear and concise procedure to be followed by the PSC in determining whether to exempt any telecommunications

---

1. *Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983).

2. 700 P.2d 1135 (Utah 1985).

3. *Id.* at 1137 (citing *Utah Dep't of Admin. Servs.*, 658 P.2d at 610 (quoting *McPhie v. Industrial Comm'n*, 567 P.2d 153, 155 (1977)); *West Jordan v. Department of Employment Sec.*, 656 P.2d 411, 412 (Utah 1982)).

4. 658 P.2d at 609–12; *Wells Fargo Armored Serv. v. Public Serv. Comm'n*, 626 P.2d 450, 451 (Utah 1981).

5. *McPhie*, 567 P.2d at 155–56; *West Jordan*, 656 P.2d at 411–12.

6. *Utah Dep't of Admin. Servs.*, 658 P.2d at 611.

7. 636 P.2d 1047 (Utah 1981).

8. *Id.* at 1051.

corporation or any public telecommunications service from the requirements of title 54. Requiring the PSC to follow the legislature's procedure does not, as respondents claim, "eliminate the Commission's power," but rather establishes the perimeters within which the PSC may properly exercise its expertise, authority, and jurisdiction.[9]

Based upon the foregoing, we need not determine the efficacy of Williams' other points on appeal. The order of the Public Service Commission is vacated and set aside.

HOWE, Associate C.J., STEWART, J., and GREENWOOD, Court of Appeals Judge, concur.

DURHAM, Justice, dissenting.

I respectfully dissent. In reviewing the PSC's interpretation of Utah Code Ann. § 54–8b–3(2) (1986), the majority opinion improperly applies the standard of review. In *Utah Department of Administrative Services v. Public Service Commission,* 658 P.2d 601, 608 (Utah 1983), this Court set forth three levels of review for examining a PSC order or decision. In the first category, we will afford great deference to PSC findings on matters of basic facts. Factual findings by the PSC will be upheld in the presence of evidence of any substance whatsoever. *Id.* at 608–09. Where the PSC has engaged in an interpretation of a general question of law, we will not defer and will review their determinations under a simple correction of error standard. *Id.* at 608. In the third and final category, we will afford considerable deference to the PSC decision and will overturn it only if it exceeds the "tolerable limits of reason" or if the PSC has acted in an arbitrary or capricious manner. *Id.* at 609–12. This third and intermediate category includes the PSC's findings on mixed questions of ultimate fact and "interpretations of the operative provisions of the statutory

law it is empowered to administer." *Id.* at 610; *see also Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988). This three-part standard of review has been followed regularly and consistently since 1983. *See, e.g., Young & Sons v. Public Serv. Comm'n,* 672 P.2d 728, 729 (Utah 1983); *Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636 (Utah 1983); *Bennion v. Utah State Bd. of Oil, Gas & Mining,* 675 P.2d 1135, 1139 (Utah 1983); *Barney v. Department of Employment Sec.,* 681 P.2d 1273, 1275 (Utah 1984); *Big K Corp. v. Public Serv. Comm'n,* 689 P.2d 1349, 1353 (Utah 1984); *Smith v. Board of Review of Indus. Comm'n,* 714 P.2d 1154, 1155 (Utah 1986); *Spreader Specialists v. Public Serv. Comm'n,* 738 P.2d 1043, 1044 (Utah 1987); *True–Flo Mechanical Sys. v. Board of Review,* 743 P.2d 1161, 1163 (Utah 1987); *Taylor v. Industrial Comm'n of Utah,* 743 P.2d 1183, 1186 (Utah 1987); *Technomedical Labs v. Securities Div.,* 744 P.2d 320, 323 (Utah Ct.App.1987); *Telecommunications v. Public Serv. Comm'n,* 747 P.2d 1029, 1030 (Utah 1987); *Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988); *Mountain States Tel. v. Public Serv. Comm'n,* 754 P.2d 928, 930 (Utah 1988).[1]

I also note that some of the authority cited by the majority opinion is inapposite. The majority opinion relied upon *Mountain States Legal Foundation v. Public Service Commission,* 636 P.2d 1047, 1051 (Utah 1981), for the proposition that this Court should not defer to the PSC's expertise in the instant case. *Mountain States* involved the PSC's creation of a separate utility rate for senior citizens. The quotation cited in the majority opinion refers to a finding of fact made by the PSC and not an interpretation by the PSC of a statute that it is empowered to administer. Additionally, *Mountain States* was decided prior to

---

**9.** *See id.*

**1.** This standard was, at least in part, statutorily based. *See* Utah Code Ann. § 54–7–16 (Supp. 1987); *Utah Dep't of Admin. Servs.,* 658 P.2d at 607. As of January 1, 1988, however, section 54–7–16 was repealed. In its place, the legislature adopted the Utah Administrative Procedures Act (UAPA). The UAPA does not apply herein, however, because this case arose before the UAPA's adoption. *See* Utah Code Ann. § 63–46b–22 (1988). Therefore, its potential effect upon our review of administrative decisions is not addressed herein.

*Utah Department of Administrative Services* and did not incorporate the currently accepted standard of review. *Mountain States* stands only for the proposition that where the PSC has no evidence whatsoever to support a factual finding, that finding must be reversed. In light of *Utah Department of Administrative Services* and the other cases cited above, *Mountain States* is not controlling in our review of the PSC's interpretation of section 54–8b–3(2).

Section 54–8b–3(2) is properly placed in the intermediate category of review. The intermediate category includes an agency's interpretation of the operative provisions of statutes that it is empowered to administer. *Williams,* 754 P.2d at 50. Section 54–8b–3 falls in this category for several reasons. First, the legislature states in the section that the "[C]ommission is vested with power and jurisdiction to partially or wholly exempt from any requirement of this title any telecommunications corporation or public telecommunications service in the state." Utah Code Ann. § 54–8b–3(1). In other words, the legislature specifically delegated authority to the PSC to make decisions concerning exemptions from regulation within the telecommunications industry. This is consistent with the language in a number of other statutes and unequivocally implies that the PSC is "empowered to administer" this section. *See, e.g.,* Utah Code Ann. §§ 54–4–4(2), –21, –23, –24.

Additionally, the scope of the powers delegated to the PSC under the Public Telecommunications Utility Law, §§ 54–8b–1 to –9, is clarified by section 54–8b–2. That section includes definitions of the subject matter of chapter 8b, but does not define "factors," "considered," or "relevant." Thus, the legislature delegated the authority to interpret the remaining operative provisions of the statutes in the chapter to the PSC.

Finally, in *Mountain States v. Public Service Commission,* 754 P.2d 928 (Utah 1988), this Court reviewed the PSC's interpretation of Utah Code Ann. §§ 54–4–1, –4, –5, –7, and –12 (1986). We held therein that those statutes fell within the intermediate category and, accordingly, the PSC's interpretation was entitled to considerable deference. *Id.* at 930. Sections 54–4–1 and 54–4–4 contain the same empowering language as section 54–8b–3.

Under the intermediate standard, the PSC's interpretation of section 54–8b–3 can be set aside only if it is arbitrary, capricious, and beyond the tolerable limits of reason. *Utah Dep't of Admin. Serv.,* 658 P.2d at 609. This assessment is made "in light of the public policy sought to be served." *Id.* at 611. In operation, the intermediate standard requires this Court to defer to the PSC's interpretation of a statute as long as that interpretation is *reasonable.* That is not to say that we must agree with the interpretation or find it to be the most accurate or preferable interpretation. Instead, as long as the interpretation is within the bounds of reason, we will defer to the PSC's expertise and insight in interpreting statutes which the legislature has empowered them to administer. In *Salt Lake City Corp. v. Confer,* 674 P.2d 632 (Utah 1983), this Court stated: "While the Commission's interpretation of this word is not the only reasonable interpretation that could have been adopted, it is well within the limits of reasonableness that confine judicial review of administrative decisions of this nature." *Id.* at 636 (citation omitted); *see also Springfield Educ. Assoc. v. Springfield,* 290 Or. 217, 621 P.2d 547, 556 (1980) (discretionary function of agency is to interpret statute and review function of court is to determine if the agency's interpretation is erroneous and not whether the agency's interpretation is preferred). The deference due under the intermediate standard is considerable. *Utah Dep't of Admin. Servs.,* 658 P.2d at 609.

I also dissent from the majority opinion's determination that the language in section 54–8b–3(2) requires the PSC to receive evidence on each factor isolated therein. The language of the statute itself, quoted in full in the majority opinion, evinces a legislative intent to grant leeway to the PSC in administering the exemption process.

Section 54–8b–3(2) can be divided into three basic segments. Initially, the legislature delegated a legislative function to the PSC by allowing it to commence, or respond to an application to commence, a proceeding seeking to exempt a segment of the telecommunications industry from regulation. Next, the subsection requires the PSC to make four specific findings prior to granting an exemption. These include findings that the telecommunications corporation or service is subject to effective competition, that customers of the telecommunications corporation or service have reasonably available alternatives, that the telecommunications corporation or service does not serve a captive consumer base, and finally, that the exemption is in the public interest of the citizens of the state. These two segments of the statute comprise its first sentence. The second sentence of subsection (2) consists of the final third of the statute and states in part: "In determining whether to exempt any telecommunications corporation or public telecommunication service from any requirement of this title, the commission shall consider all relevant factors including, but not limited to: [factors a. through k.]." This sentence is the crux of the dispute before the Court. Williams asserts that this language requires the PSC to receive evidence on each and every factor. The PSC interprets the factors listed in a. through k. as a guide in its assessment of the merits of an application for exemption from regulation. Although not necessarily finding the PSC's interpretation to be the most preferable, I think it is within the limits of reason, and I am constrained to uphold it under the applicable standard of review.

The statutory language itself demonstrates that the legislature did not intend the PSC to receive evidence on and consider each factor in every application. First, section 54–8b–3(2) states that the PSC shall "consider" all relevant factors. The word "consider" is used in the third portion of the statute, in contrast to the first portion, which mandates four "findings" as a requirement for exemption. The legislature clearly contemplated a qualitatively different assessment by the PSC when it used

"consider" instead of "finding." Next, the factors are only factors and not findings. If the legislature had sought to require the PSC to make evidentiary findings on each factor, the statute would presumably say so, since it contains such requirements in other instances. Indeed, the interpretation urged upon this Court by Williams quite easily leads to an absurd result. Under Williams' construction, the PSC is required to receive evidence on each factor but not to make findings on each factor. The PSC could thereby receive a minimal amount of evidence, sufficient to satisfy the technical terms of the statute, and then assert that it had "considered" each factor without giving a statement as to its findings or the weight of the evidence received. This makes little sense and cannot be the result intended by the drafters of the statute.

Additionally, as the PSC claims, the factors are not all reducible to factual questions. For example, factor (g) states: "the overall impact of exemption on the public interest." Although an array of facts may go into an evaluation of the impact of an exemption on the public interest, the factor in and of itself is not reducible to a quantitative or an objective qualitative analysis. Instead, it requires the PSC to evaluate the evidence it has received in making the four findings mentioned earlier in the statute and applying its expertise in assessing the policy ramifications of the possible exemption for the public interest.

The majority opinion also points to the word "shall" in the statute and argues that this constitutes a requirement that the PSC receive evidence on each factor. Although "shall" is usually construed as presenting a mandatory requirement, "when the spirit and purpose of the legislation require that the word 'shall' be construed as permissive rather than mandatory, such will be done." 1 Am.Jur.2d *Administrative Law* § 46 (1962). However, it is not necessary to construe "shall" as permissive in order to uphold the rationale in the PSC's interpretation.

As maintained above, the legislature seems to have intended that the PSC consider all *relevant* factors. It provided an

illustrative list of factors to the PSC to serve as a guide to those points which may be relevant. However, in evaluating any given application for exemption, some of the factors listed may not be relevant, while other factors not listed may be relevant. The decision as to the relevancy of any given factor is for the PSC alone. This is evidenced by the statutory language and fulfills the policy underlying the statute, which is to delegate exemption determinations to the PSC. The legislature simply wished the PSC to assess any and all relevant factors which may impact upon a decision to exempt a segment of the telecommunications industry from regulation. It did not seek to limit or define the scope of that inquiry. This intent was expressed in section 54–8b–3(2).[2]

I believe that the majority opinion has improperly failed to defer to the PSC's interpretation of this statute. Although my position would require an assessment of Williams' remaining claims, it is unnecessary to treat them in the context of a dissent.

ZIMMERMAN, J., having disqualified himself, does not participate herein; GREENWOOD, Court of Appeals Judge, sat.

2. A similar legislative intent can be seen in Utah Code Ann. § 54–4a–6(4) (1986), where the legislature also formulated a list of factors which may be considered prior to rendering an order.