2008 UT 44

**Christopher M. SULLIVAN, Petitioner,**

v.

**UTAH BOARD OF OIL, GAS AND MINING; and Kerr–McGee Oil & Gas Onshore, LP, Respondents.**

**No. 20070410.**

Supreme Court of Utah.

July 11, 2008.

Rehearing Denied July 11, 2008.

---

Christopher M. Sullivan, Boulder, CO, pro se petitioner.

Mark L. Shurtleff, Att'y Gen., Michael S. Johnson, Asst. Att'y Gen., Salt Lake City, for respondent Utah Board of Oil, Gas and Mining.

Craig D. Galli, Cecilia M. Romero, Salt Lake City, for respondent Kerr–McGee Oil & Gas Onshore.

## AMENDED OPINION

PARRISH, Justice:

## INTRODUCTION

¶ 1 In 2006, Christopher M. Sullivan filed a request for agency action with the Utah Board of Oil, Gas and Mining (the "Board"). Sullivan claimed to be legally entitled to a share of the proceeds from sixteen oil and gas wells owned and operated by Kerr–McGee Oil & Gas Onshore, LP ("KMG"). We are asked to determine whether the Board properly denied Sullivan's request for agency action. Sullivan argues that the Board erred by (1) dismissing his request without a hearing on the merits, (2) refusing to continue the matter pending the outcome of a parallel state court action, and (3) refusing to order that KMG deposit the disputed proceeds in an escrow account. We find no error and therefore affirm the Board's denial of Sullivan's request for agency action.

## BACKGROUND

¶ 2 In 1970, the Bureau of Land Management awarded an oil and gas lease to Joseph A. Thomas. In 1972, Thomas assigned the lease to Raymond Chorney under an Assignment Affecting Record Title to Oil and Gas Lease (the "Assignment"). As part of the Assignment, Thomas reserved rights to certain royalty payments. This reservation of royalty payments is the basis of the underlying dispute between the successors in interest to the Assignment. KMG—Chor-

ney's successor in interest—interprets the Assignment as only requiring production payments, whereas Sullivan—one of Thomas' successors in interest[1]—interprets the Assignment as requiring both production payments and overriding royalty payments.[2]

¶ 3 The dispute between KMG and Sullivan began in February 2006, when KMG sent two letters to Sullivan declaring that, upon review of the Assignment, KMG's obligation had been "satisfied and paid in full as of December 2004." KMG stated that the letters served as notice that it would make no further royalty payments to Sullivan. Additionally, KMG claimed that it had overpaid Sullivan $152,322.96 and insisted that Sullivan remit the overpayment. In his response letter, Sullivan disagreed with KMG's interpretation of the Assignment. Sullivan insisted that KMG resume the royalty payments and claimed that KMG owed him $218,480 in unpaid production payments.

¶ 4 Sullivan filed a request for agency action with the Board in July 2006. Sullivan claimed that KMG's refusal to make the royalty payments constituted a breach of contract, and he requested that the Board set the matter for investigation and negotiation. Sullivan further requested that, in the event the matter could not be resolved after investigation and negotiation, the Board set the matter for a hearing and, thereafter, enter an order stating (1) that Sullivan is entitled to the proceeds, (2) that KMG's nonpayment of the proceeds was without reasonable justification, (3) that KMG must pay future proceeds to Sullivan, and (4) that KMG must pay penalties and interest. In its response to Sullivan's request, KMG acknowledged the underlying contractual dispute, but insisted that its interpretation of the Assignment was correct and that it owed Sullivan nothing. KMG subsequently filed a separate civil action in the Eighth District Court in order to resolve the underlying contract dispute.

---

1. Sullivan is a successor in interest to fifty percent of the legal rights reserved by Thomas. The other fifty-percent interest holder, B & A Properties, LLC, declined to participate in the proceeding below and is not a party to this action.

2. "An overriding royalty is an interest running throughout the term of the lease, while ... [a] production payment is an interest running only until it has yielded a specified sum of money." *Alamo Nat'l Bank of San Antonio, Tex. v. Hurd*, 485 S.W.2d 335, 338–39 (Tex.Civ.App.1972).

¶ 5 In December 2006, pursuant to a stipulation between the parties, the Board instructed the Division of Oil, Gas and Mining (the "Division") to commence a sixty-day investigation and negotiation period in accordance with Utah Code section 40–6–9(5) (2005). The parties submitted documents and evidence in support of their positions, which the Division reviewed. In January 2007, the Division met with the parties to hear arguments and to facilitate negotiations, but the Division was ultimately unsuccessful in helping the parties reach a settlement.

¶ 6 The Division issued its Memorandum Regarding Investigation and Negotiations in February 2007. The Division noted that it "is not necessarily [an] expert in the rules governing a determination of marketable title or the right to proceeds" and that it "relies on the courts for these determinations." The Division concluded that its investigation "did not discover facts that provide a proper basis for Board action if a hearing were held." As a result, the Division recommended that the Board not set the matter for a hearing and instead allow the parties to pursue their legal remedies in the pending state court action.

¶ 7 At its March 2007 meeting, the Board reviewed the Division's recommendation and heard arguments from the parties. KMG urged the Board to dismiss Sullivan's request for agency action so that the parties could resolve their dispute in the pending state court action. Sullivan agreed that the underlying contractual dispute should be decided in state court, but urged the Board to grant the limited relief of ordering KMG to deposit the disputed funds in an interest-bearing escrow account until the dispute was resolved.[3] After hearing the parties' arguments and deliberating, the Board denied Sullivan's request that the disputed funds be paid into escrow.

¶ 8 In April 2007, the Board issued its Findings of Fact, Conclusions of Law, and Order. The Board determined that under Utah Code section 40–6–9(6), it had the discretion to either (1) set a hearing or (2) decline to set a hearing and allow Sullivan to seek a remedy in court. Because the Board determined that the contractual dispute would be better resolved in the already-pending state court action, the Board declined to set a hearing, thereby allowing the parties to resolve their conflict in court. In short, the Board denied Sullivan's request for agency action.

¶ 9 Sullivan filed a petition for review with this court. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(e)(iv) (2008).

## STANDARD OF REVIEW

¶ 10 We will grant relief "only if, on the basis of the agency's record ... [the] person seeking judicial review has been substantially prejudiced." Utah Code Ann. § 63–46b–16(4) (2004). We review an administrative agency's "interpretation of its statutorily granted powers and authority as a question of law, with no deference to the agency's view of the law." *Bevans v. Indus. Comm'n,* 790 P.2d 573, 576 (Utah Ct.App. 1990); *see also Bennion v. Graham Res., Inc.,* 849 P.2d 569, 570 (Utah 1993) ("[W]e review the Board's interpretation of the applicable statutes for correctness and give its view on the matter no particular deference."). "Issues of legal discretion may be challenged only by showing that 'the agency action is ... an abuse of the discretion delegated to the agency by statute.'" *WWC Holding Co. v. Pub. Serv. Comm'n,* 2002 UT 23, ¶ 8, 44 P.3d 714 (quoting Utah Code Ann. § 63–46b–16(4)(h)(i) (1997)). " 'An agency has abused its discretion when the agency's action,

---

3. Specifically, Sullivan's counsel stated,

> My client, Mr. Sullivan, for the most part concurs with the Division's take on this, that this is a matter best decided before a court. However, we would ... urge the Board to require compliance with the statute insofar as imposing a requirement that the disputed funds be placed into escrow.

Later in the meeting, Sullivan's counsel again clarified that the only remedy Sullivan was seeking from the Board was that the Board require KMG to deposit the disputed royalty payments into an escrow account.

> [Board member:] [I]f I understood you correctly, you said that Mr. Sullivan's only interest in this at this point is that the disputed funds ... be placed in an escrow account; is that correct?
>
> [Sullivan's counsel:] That is correct at this point, simply because we feel that [KMG's] counsel's correct, that the ownership issues are ... better resolved before the court.

viewed in the context of the language and purpose of the governing statute, is unreasonable.'" *Id.* (quoting *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 587 (Utah 1991)).

## ANALYSIS

¶ 11 Sullivan argues that the Board erred by (1) dismissing his request for agency action without holding a hearing on the merits, (2) refusing to continue the matter pending the outcome of the parallel state court action, and (3) refusing to order KMG to deposit the disputed funds in an escrow account. Because Sullivan waived his hearing request and failed to ask for a continuance before the Board, we do not reach his substantive arguments on the first two assignments of error. As to the third assignment of error, we determine that although the Board generally has discretion to order a payor to deposit disputed proceeds into escrow, the Board did not have that discretion under the facts of this case.

## I. SULLIVAN WAIVED HIS REQUEST FOR A HEARING

¶ 12 We recently reiterated the general rule that "'one who acquiesces in a judgment cannot later attack it.'" *Gardner v. Bd. of County Comm'rs*, 2008 UT 6, ¶ 46, 178 P.3d 893 (quoting *Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987)). In *Gardner*, the district court issued a decision on cross-motions for summary judgment, which disposed of all but four issues. *Id.* ¶ 44. The county then moved for summary judgment on the remaining issues, and counsel for the opposing landowners asked the court to rule against his clients. *Id.* ¶ 45. The court acquiesced by granting the County's motion for summary judgment, thereby dismissing with prejudice the remaining claims. *Id.* We held that counsel's acquiescence in the dismissal of the four issues constituted a waiver of the right to appeal those issues. *Id.* ¶ 47.

¶ 13 At the March 2007 Board meeting, Sullivan's counsel acquiesced in the Division's recommendation that the Board deny a hearing and allow the parties to resolve the contractual dispute in the pending state court action. Indeed, Sullivan's counsel told the Board that the only remedy Sullivan was seeking from the Board was that KMG be required to deposit the disputed funds into escrow. Because Sullivan acquiesced in the Board's decision to deny a hearing, he thereby waived his right to petition this court for review of that decision.

## II. SULLIVAN FAILED TO ASK FOR A CONTINUANCE BEFORE THE BOARD

¶ 14 "We have consistently held that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." *Brown & Root Indus. Serv. v. Indus. Comm'n*, 947 P.2d 671, 677 (Utah 1997). "The rationale is that by raising an issue at the administrative level ... [the administrative agency] 'could have adjudicated the issue.'" *Whitear v. Labor Comm'n*, 973 P.2d 982, 985 (Utah Ct.App.1998) (quoting *Pease v. Indus. Comm'n*, 694 P.2d 613, 616 (Utah 1984)).

¶ 15 The only mention of a continuance in the record of the proceedings before the agency is contained in Sullivan's unsolicited "Response to Division's Memorandum." However, Sullivan's request for continuance was that the Board not consider the matter at its February 2007 meeting and instead continue the matter until its March 2007 meeting. At the February meeting, the Board granted Sullivan's request and voted to continue the matter until the March meeting. At the March meeting, Sullivan's counsel told the Board that the only remedy Sullivan was seeking was that the Board require KMG to deposit the disputed funds in an escrow account. At no point during the meeting did Sullivan request that the Board continue the matter pending the resolution of the state court action. Because Sullivan failed to request a continuance before the Board, he is precluded from raising the issue before this court.

¶ 16 Additionally, even if Sullivan had requested a continuance and the Board had denied the request, Sullivan has failed to show substantial prejudice. *See* Utah Code

Ann. § 63–46b–16(4) (2004). We see nothing in the relevant statute that would prevent Sullivan from again requesting agency action once the underlying contractual dispute is resolved in state court. In other words, assuming Sullivan were to prevail in the state court action and the court were to order KMG to pay the disputed royalty payments to Sullivan, Sullivan could file another request for agency action. In his request, Sullivan could ask for a hearing in which the Board could decide whether he is entitled to the statutorily authorized rate of interest on the disputed funds that KMG did not place in an escrow account and whether KMG's delay of payment was without reasonable justification, thereby entitling Sullivan to a penalty imposed upon KMG. *See id.* § 40–6–9(4)–(7) (2005). Because Sullivan is not prohibited from returning to the Board following the resolution of the underlying contract dispute, the Board's failure to continue the matter pending resolution of the state court lawsuit did not substantially prejudice Sullivan.

¶ 17 In sum, because Sullivan failed to ask for a continuance and has not demonstrated substantial prejudice, we do not reach the issue of whether Sullivan was entitled to a continuance.

## III. THE BOARD COULD NOT HAVE EXERCISED ITS DISCRETION TO ORDER KMG TO DEPOSIT THE DISPUTED PROCEEDS INTO ESCROW

¶ 18 Sullivan also alleges that the Board erred in not requiring KMG to deposit the disputed proceeds into an escrow account. At the March 2007 Board meeting, the sole remedy sought by Sullivan was for the Board to issue an order forcing KMG to deposit the disputed funds into an escrow account pending resolution of the state court action. Ultimately, the Board declined to issue the order.

¶ 19 On appeal, one of the Board's principal arguments is that, under the plain language of the royalty statute, it does not have the power to force a payor to deposit disputed proceeds into an escrow account. In support of this argument, the Board cites subsection (7) of Utah Code section 40–6–9, which provides that if a payor has not deposited the proceeds into escrow, the available remedies are interest and penalties. *See* Utah Code Ann. § 40–6–9(7)(a)(ii) (2005) (providing that the Board may require the payor to pay interest "as a substitute for an escrow account interest rate"). The Board argues that placing funds into an escrow account is an "input" into the Board's decision-making process rather than an "output." In other words, the Board is to consider whether the funds have been deposited into escrow when deciding whether to assess interest and/or penalties, but the Board cannot require a payor to deposit disputed funds into an escrow account.

¶ 20 The arguments before the Board and before this court focused on whether section 40–6–9, which specifically addresses royalties, authorized the Board to order KMG to deposit the disputed funds into escrow. We agree with the Board that this section does not authorize it to order an escrow. However, the parties failed to focus on another statute that does authorize the Board to force escrow. Under section 40–6–11, which addresses the Board's enforcement powers generally, "[w]henever it appears that any person is violating *any provision* of this chapter ... the board *may* issue an order requiring compliance within a period not to exceed 30 days." *Id.* § 40–6–11(3)(a) (emphases added). This statute is clearly broad enough to empower the Board to issue an order requiring a payor to comply with the requirements of section 40–6–9(3)(b) by depositing accrued proceeds into an escrow account. Thus, we conclude that the Board does have the discretion to force a payor to deposit accrued payments into escrow.

¶ 21 Nevertheless, under the facts of this case, we determine that the Board did not have the discretion to force KMG to deposit the disputed funds into escrow. Under section 40–6–9(3), "[i]f *accrued* payments cannot be made within the time limits ... the payor shall deposit all oil and gas proceeds *credited to the eventual oil and gas proceeds owner* to an escrow account...." *Id.* § 40–6–9(3)(b)(i) (emphases added). Under section 40–6–11, "[w]henever it *appears* that any person is violating any provision of

this chapter ... the board *may* issue an order requiring compliance...." *Id.* § 40-6-11(3)(a) (emphases added). Under this statute, it must first "appear" that a provision is being violated before the Board can exercise its discretion in deciding whether to issue an order compelling compliance. Thus, in this case, before the Board could determine whether to grant Sullivan's request and issue the order requiring that KMG deposit the money into escrow, it must have "appeared" that KMG was violating section 40-6-9(3). In other words, it must have appeared that there were "accrued payments" and that there was an "eventual oil and gas proceeds owner." *Id.* § 40-6-9(3)(b)(i).

¶ 22 It is undisputed, however, that there was a legitimate contractual dispute regarding whether KMG owed any royalty proceeds to Sullivan. If KMG's interpretation of the Assignment was correct, there were neither accrued payments nor an eventual oil and gas proceeds owner. On the other hand, if Sullivan's interpretation of the Agreement was correct, there were accrued payments and he was the oil and gas proceeds owner. Based on the Division's memorandum submitted to the Board, it is clear that the Division was not able to resolve the contractual claim and was, therefore, uncertain as to whether there were accrued payments at issue. The Division, KMG, and Sullivan all agreed that the underlying contractual dispute was best resolved in the state court action. As a result, there were no substantive arguments before the Board regarding whether there were accrued payments to which Sullivan was entitled. Because the Board was presented with no evidence from either Sullivan or KMG regarding the core issues—whether there were accrued payments and whether Sullivan was the proceeds owner entitled to any such payments—it could not have "appeared" to the Board that KMG was violating section 40-6-9(3). Because it could not have appeared that KMG was violating the statute, the Board could not have proceeded to the next step of exercising its discretion in deciding whether to issue an order requiring KMG's compliance with the statute. We therefore affirm the Board's decision to refuse to issue such an order.

## CONCLUSION

¶ 23 The Board correctly denied Sullivan's request for agency action. Affirmed.

¶ 24 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.