2013 UT App 172

# THE UTAH COURT OF APPEALS

CHRIS K. KUNEJ,
Petitioner,
*v.*
LABOR COMMISSION AND UNIVERSITY OF UTAH,
Respondents.

Memorandum Decision
No. 20120416-CA
Filed July 11, 2013

Original Proceeding in this Court

Chris K. Kunej, Petitioner Pro Se
John E. Swallow, J. Clifford Petersen, and
J. Francis Valerga, Attorneys for Respondent
University of Utah
Alan L. Hennebold, Attorney for Respondent
Labor Commission

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and JAMES Z. DAVIS
concurred.

CHRISTIANSEN, Judge:

¶1 Chris K. Kunej challenges the Labor Commission's (the Commission) order dismissing Kunej's employment discrimination claim against the University of Utah (the University). We decline to disturb the Commission's decision.

¶2 During 2007, Kunej applied for twenty-eight different positions with the University but was ultimately not hired for any of these positions—many of which were filled by female applicants. On May 30, 2008, Kunej filed a discrimination claim with the Antidiscrimination and Labor Division of the

Commission, alleging gender discrimination in the University's hiring practices. On January 26, 2010, the Antidiscrimination and Labor Division issued a determination and order finding there was no reasonable cause to conclude Kunej had been subjected to the alleged discriminatory practices. Kunej timely appealed, requesting a formal evidentiary hearing before an Administrative Law Judge (the ALJ). Following the hearing, the ALJ determined that Kunej had failed to demonstrate that the University's stated reasons for not hiring him were a pretext for gender-based discrimination and dismissed Kunej's discrimination claim. Kunej then timely filed with the Commission a motion to review, and separately filed a "motion to vacate" alleging that the ALJ was biased. On April 24, 2012, the Commission, through its Appeals Board (the Board), issued an order affirming the ALJ's dismissal of Kunej's discrimination claim, finding that Kunej's allegations of bias were unsubstantiated. Kunej now petitions this court for judicial review of the Commission's final agency action.

¶3     Kunej first argues that the Commission erred in concluding that the reasons given by the University for declining to hire Kunej were not a pretext for gender-based discrimination. Under the Utah Antidiscrimination Act (UADA), it is a discriminatory employment practice to refuse to hire any person otherwise qualified because of that person's gender. *See* Utah Code Ann. § 34A-5-106(1)(a)(i)(C) (LexisNexis Supp. 2012) ("An employer may not refuse to hire . . . any person otherwise qualified, because of . . . sex . . . ."). "To establish a claim of employment discrimination, the employee has the initial burden to establish a prima facie showing of the employer's discrimination." *Sheikh v. Department of Pub. Safety*, 904 P.2d 1103, 1106 (Utah Ct. App. 1995) (citation and internal quotation marks omitted). "Once a prima facie case has been established, the burden to produce evidence shifts to the employer who must articulate a legitimate, nondiscriminatory reason for its suspect conduct." *Id.* "If the employer succeeds in rebutting the

inference of discrimination, the burden of production shifts back to the employee who must then show by a preponderance of the evidence that the employer's articulated reasons were merely a pretext for discrimination." *Id.* "The ultimate burden of persuasion that the employer discriminated against the employee remains at all times with the plaintiff." *Id.* (citation and internal quotation marks omitted).

¶4 The parties do not dispute that Kunej initially made a prima facie showing of discrimination and that the University articulated a nondiscriminatory explanation of its hiring decisions. Thus, Kunej had the burden to persuade the Commission "that a discriminatory reason more likely motivated [the employer] than the reasons it proffered or, in the alternative, to discredit its explanation." *See University of Utah v. Industrial Comm'n*, 736 P.2d 630, 636 (Utah 1987).

¶5 Under the Utah Administrative Procedures Act, we may grant relief if "the agency has erroneously interpreted or applied the law." Utah Code Ann. § 63G-4-403(4)(d). Because review under subsection (4)(d) does not "imply a specific standard of review," we are "free to apply our traditional approach in selecting the appropriate standard of review" based on "whether the [agency]'s decision qualifies as a finding of fact, a conclusion of law, or a determination of a mixed question of law and fact." *See Murray v. Labor Comm'n*, 2013 UT 38, ¶¶ 23–24. Whether the Commission misapplied the law to the particular facts of a case is a traditional mixed question of law and fact, and our degree of deference to the Commission's decision therefore turns on whether its decision is "fact-like" or "law-like." *Id.* ¶ 24, 37. The determination whether an employer's conduct was motivated by discrimination—i.e., that its proffered explanation was pretextual—is "both sensitive and difficult." *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1266 (10th Cir. 1988) (evaluating employment discrimination claim under Title VII

of the federal Civil Rights Act).[1] "In assessing pretext, everything depends on the individual facts." *McDonough v. City of Quincy*, 452 F.3d 8, 19 (1st Cir. 2006) (citation and internal quotation marks omitted). Thus, the Commission's pretext determination is not "law-like" because the "particular facts and circumstances" of the conduct at issue "are likely to be so complex and varying that no rule adequately addressing the relevance of all these facts can be spelled out." *See In re Adoption of Baby B.*, 2012 UT 35, ¶¶ 42–43. Moreover, because the Commission must necessarily "decide which party's explanation of the employer's motivation it believes," *Pitre*, 843 F.2d at 1266, the Commission's pretext determination "would often be affected by [its] observation of a competing witness's appearance and demeanor on matters that cannot be adequately reflected in the record available to appellate courts," and the determination is therefore "fact-like," *see In re Adoption of Baby B.*, 2012 UT 35, ¶¶ 42–43. Such a "fact-like" determination is entitled to deference by this court, "and would be properly [approved] on [review] if not clearly erroneous." *Id.* ¶ 46.

¶6 To show that an employer's explanation for a hiring decision is pretextual, a plaintiff must "demonstrat[e] that the employer's explanation for its decision was so implausible, incoherent, or internally contradictory that the decision must have been made on some other basis." *Conroy v. Vilsack*, 707 F.3d 1163, 1174 (10th Cir. 2013) (citation and internal quotation marks omitted). In evaluating

---

[1]The UADA was modeled after Title VII of the Civil Rights Act, *Darvish v. Labor Comm'n*, 2012 UT App 68, ¶ 23, 273 P.3d 953, and Utah courts have adopted a framework for analyzing UADA claims that mirrors the Title VII inquiry, *see Sheikh v. Department of Pub. Safety*, 904 P.2d 1103, 1106 (Utah Ct. App. 1995). Thus, "in interpreting the [UADA], the substantial body of federal case law interpreting Title VII is useful." *Darvish*, 2012 UT App 68, ¶ 23 (citation and internal quotation marks omitted).

the employer's justification for its hiring decision, the court must "examine the facts as they appear *to the person making the decision*." *Id.* (citation and internal quotation marks omitted). Thus, a court does not evaluate whether an employer's hiring decision was "wise, fair or correct," but only whether its decision was made in good faith, *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) (citation and internal quotation marks omitted), and based on lawful criteria, *University of Utah*, 736 P.2d at 636.

¶7     We note at the outset that Kunej does not marshal the evidence supporting the Commission's factual findings, as he purports to challenge only the Commission's legal conclusions. Thus, we "assume the record supports the Commission's findings" contained within the final agency order regarding the qualifications required for each of the positions at issue and the qualifications of Kunej and the hired applicants. *See Whitear v. Labor Comm'n*, 973 P.2d 982, 985 (Utah Ct. App. 1998).

¶8     Kunej's primary argument is that other applicants were so underqualified for the positions for which they were hired, or that Kunej's qualifications were so superior to those of the hired applicants, that only a discriminatory motive can explain the University's hiring decisions. He also asserts that pretext was demonstrated through inconsistencies drawn from witness testimony at the evidentiary hearing and by the actions of the University's Director of Financial Aid (the Director).[2]

---

[2]Kunej also argues that because an all-female panel performed the interview for one or more positions, the makeup of the panel is "indirect statistical evidence of discrimination" indicating disparate impact. Kunej provides no authority for this proposition and fails to explain how this should have affected

(continued...)

¶9    First, Kunej purports to show that various candidates selected by the University were less qualified than the University believed them to be, yet this argument misunderstands the relevant inquiry. "The relevant inquiry is not whether [the employer's] proffered explanations were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith on those beliefs." *Exum*, 389 F.3d at 1138 (second alteration in original) (citation and internal quotation marks omitted). "Although the employee, and even the judge, may believe that the employer misjudged the qualifications of the applicants, that does not, without more, subject the employer to liability under the [UADA]." *University of Utah v. Industrial Comm'n*, 736 P.2d 630, 636 (Utah 1987) (emphasis omitted). The question before the Commission was not whether the University wisely or correctly evaluated the qualifications of the applicants, but whether the University made its hiring decision based only upon the information before it at the time it made the hiring decision, rather than upon a discriminatory motive. Indeed, whether an applicant misrepresented her qualifications or the University misjudged an applicant's qualifications has no bearing on whether the University discriminated against Kunej.

¶10    Second, Kunej places much weight on a supposed disparity between his own qualifications and those of the hired applicants. To demonstrate pretext on this basis, Kunej must show "an

---

[2](...continued)
the Commission's findings regarding pretext or disparate impact. Because this issue is inadequately briefed, we do not address it further. *See* Utah R. App. P. 24(a)(9) (listing requirements for briefs); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (stating that an issue is inadequately briefed "when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court").

overwhelming merit disparity" between himself and the selected applicant for a given position. *See Conroy*, 707 F.3d at 1172. However, the Commission's findings do not reflect an overwhelming merit disparity—Kunej does not possess a college degree, and University employees involved in the hiring process expressed concerns about his interpersonal skills, education, and work history. Rather, for a number of the positions at issue here, and based upon the requirements of the position, the Commission found Kunej to be less qualified than the hired applicant. It is clear that an employer has the discretion to determine what the relevant criteria for a given hiring decision will be, *see id.* at 1172–73, so long as these criteria are not unlawful, *University of Utah*, 736 P.2d at 636. The record demonstrates that the University presented non-discriminatory hiring criteria that are lawful pursuant to the UADA. Given the factual findings here, the Commission's conclusion that there was insufficient disparity between Kunej's purported qualifications and the qualifications of the successful candidates to support a finding of pretext is not clearly erroneous.

¶11    Additionally, Kunej asserts that a variety of alleged inconsistencies or contradictions in witness testimony at the evidentiary hearing demonstrate that the University's proffered explanation is merely a pretext. Kunej has failed to provide this court with a transcript of the evidentiary hearing, despite having the burden as the appellant to provide a transcript of the relevant proceedings below. Utah R. App. P. 11(e); *see Gorostieta v. Parkinson*, 2000 UT 99, ¶ 16, 17 P.3d 1110 ("Parties claiming error below and seeking appellate review have the duty and responsibility to support their allegations with an adequate record." (citation and internal quotation marks omitted)). Without an adequate record to review this challenge to the Commission's determination, we must "presume the regularity of the proceedings below." *See Bagley v. KSM Guitars, Inc.*, 2012 UT App 257, ¶ 11, 290 P.3d 26 (quoting *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278); *State v. Nielsen*, 2011 UT

App 211, ¶ 4, 257 P.3d 1103 (per curiam) ("Absent a transcript of that day's hearing, this court cannot review the adequacy of the . . . findings or the ultimate decision . . . .").

¶12    We recognize that, as a pro se litigant, Kunej should be "accorded every consideration that may reasonably be indulged." *See State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171 (citation and internal quotation marks omitted). Nevertheless, "a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar." *Id.* (citation and internal quotation marks omitted). We also note that the Utah Rules of Appellate Procedure allow for substitute methods of providing an adequate record in the event of an appellant's impecuniosity, of which methods Kunej did not avail himself. *See* Utah R. App. P. 11(f), (g). Under these circumstances, we cannot relieve Kunej of his obligation to comply with the rules of appellate procedure.

¶13    Finally, Kunej claims that pretext is shown by the Director's questioning of Kunej about his knowledge of financial aid during a meeting Kunej requested to discuss his concerns about not being hired. Kunej asserts that the Director's questioning regarding Kunej's financial aid knowledge shows "disparate treatment" because none of the other candidates for the financial aid position were tested on their knowledge of the subject. However, Kunej does not explain how this supports his claim of gender discrimination when four of the other twelve candidates interviewed for the position were also men. Furthermore, Kunej argues that, subsequent to that meeting, the Director's name was added to the financial aid department's online staff directory, where it had not appeared before. Kunej argues that the addition of the Director's name to the staff directory shows "*deceit* used to cover one's tracks" because Kunej had voiced concerns about the male-to-female staff ratio in the department. Kunej does not allege

that the addition of the Director's name to the listing was inaccurate or dishonest. Rather, Kunej argues that the correction of this omission in the online staff directory is evidence of pretext because it had the effect of improving the apparent male-to-female staff ratio of the department.

¶14    Having reviewed the Commission's factual findings, we conclude that we must defer to the Commission's application of the law to the facts before it. Even if we accept Kunej's argument regarding the staff directory, the University's explanation for its hiring decision for each of the positions at issue here, viewed in light of the whole record, is not "so implausible, incoherent, or internally contradictory" that it was erroneous for the Commission to find the proffered explanation was not pretextual. Because the Commission's determination that the University's explanations were not pretextual is not clearly erroneous, we decline to disturb the Commission's decision on this basis.

¶15    Kunej next argues that the Commission erred in finding that Kunej did not demonstrate that the University's hiring practices had a disparate impact on him as a male. "[A] plaintiff may establish a *prima facie* case of disparate impact discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1187 (10th Cir. 2006) (alteration in original) (citation and internal quotation marks omitted). "[W]here a plaintiff relies on statistical evidence" to demonstrate disparate impact, "he must show gross statistical disparities." *Foster v. Ruhrpumpen, Inc.*, 166 F. App'x 389, 393 (10th Cir. 2006) (citation and internal quotation marks omitted). Whether a party has failed to establish a prima facie case of employment discrimination is a question of law, which we review for correctness. *See Sheikh v. Department of Pub. Safety*, 904 P.2d 1103, 1105 (Utah Ct. App. 1995); *see also Murray v. Labor Comm'n*, 2013 UT

38, ¶¶ 23–24 (explaining that our traditional standards of review are applicable to judicial review of an agency's interpretation or application of the law).

¶16    The employment practice that Kunej claims caused a disparate impact on male applicants was the subjective nature of the interviews conducted by various departments at the University. However, the limited statistical evidence contained in this record does not show a significant disparate impact on male applicants. The Commission found that of the twenty-four positions for which Kunej applied that were ultimately filled by the University, 74% were filled with female applicants from an applicant pool that consisted of 72% females.[3] We agree with the Commission that such a minimal difference between the gender composition of the applicant pool and the hired applicants does not show the "gross statistical disparities" necessary to demonstrate a significant disparate impact on male applicants. *See Foster*, 166 F. App'x at 393.

¶17    Kunej contends that we should evaluate his disparate impact claim solely on the basis of the six positions for which the Commission determined Kunej's claims were timely filed.[4] Kunej

---

[3]Because Kunej does not marshal the evidence supporting this factual finding by the Commission, "we assume the record supports the Commission's findings." *See Whitear v. Labor Comm'n*, 973 P.2d 982, 985 (Utah Ct. App. 1998).

[4]While Kunej applied for twenty-eight positions with the University, the Commission determined that Kunej's discrimination claim was timely for only six of those positions. *See* Utah Code Ann. § 34A-5-107(1)(c) (LexisNexis 2011) (requiring that a request for agency action be filed within 180 days after the alleged discriminatory or prohibited employment

(continued...)

provides no authority for the proposition that the University's hiring practices outside of the 180-day limitations period on filing a discrimination claim are not relevant to a disparate impact analysis. However, even if Kunej were correct, this argument is self-defeating because the suggested group is "too small to provide reliable statistical results" and thus "carries little or no probative force to show discrimination." *See Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991) (explaining that a group of nine employees was too small a statistical sample to provide reliable results, because the termination or retention of just one or two employees "would have had an enormous impact on the percentage" of employees impacted). Because Kunej has failed to advance evidence demonstrating a significant disparate impact on male applicants attributable to the challenged employment practice, he has not made a prima facie case of disparate impact. Thus, the Commission did not err by dismissing his disparate impact claim.

¶18    Kunej next claims that the Commission erred by not vacating the decision of the ALJ due to the ALJ's failure to disqualify herself from the case. Kunej alleges that the ALJ was biased because the ALJ previously worked for the University and for the Utah Attorney General's Office (which represents the University in this proceeding). "Determining whether a trial judge committed error by failing to recuse himself . . . is a question of law, and we review such questions for correctness." *See Lunt v. Lance*, 2008 UT App 192, ¶ 7, 186 P.3d 978 (omission in original) (citation and internal quotation marks omitted); *see also Murray*, 2013 UT 38, ¶¶ 23–24 (explaining that our traditional standards of review are applicable to judicial review of an agency's interpretation or application of the law). Because "judges are presumed to be qualified," the party alleging bias "bears the

---

[4](...continued)
practice occurred). Kunej does not challenge this determination.

burden of demonstrating that the judge is not qualified to act on the case." *In re Affidavit of Bias*, 947 P.2d 1152, 1153 (Utah 1997) (mem.).

¶19    Under Utah Code section 78A-2-222, a judge may not sit or act in any proceeding in which she has been attorney or counsel for either party in that proceeding, except by consent of the parties. Utah Code Ann. § 78A-2-222(1)(c) (LexisNexis 2012). This prohibition is applicable to administrative law judges. *Anderson v. Industrial Comm'n*, 696 P.2d 1219, 1221 (Utah 1985). However, a judge need not recuse herself in every case where she has had contact with a party on an unrelated matter, *see State v. Neeley*, 748 P.2d 1091, 1094 (Utah 1988), or where her former employer participates as counsel in the proceeding on a matter in which the judge herself never participated, *see In re Affidavit of Bias*, 947 P.2d at 1155. Here, the ALJ worked in the Utah Attorney General's Office from August 1991 to November 1993 and from November 1998 to July 2003. The ALJ also worked in the University's Office of Equal Opportunity and Affirmative Action from June 1994 to July 1996. There is nothing in the record before us to suggest any connection between the present litigation and any matters in which the ALJ was involved while employed at the Utah Attorney General's Office or the University that would have required the ALJ's recusal under section 78A-2-222.

¶20    Additionally, a judge "should disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned." *West Jordan City v. Goodman*, 2006 UT 27, ¶ 21, 135 P.3d 874 (citation and internal quotation marks omitted). However, "judges are not subject to disqualification in *every* situation where their impartiality is questioned, particularly when the potential for bias is remote." *Id.* "Where a case . . . involves remote, contingent, indirect or speculative interests, disqualification is not required." *American Rural Cellular, Inc. v. Systems Commc'n Corp.*, 939 P.2d 185, 196 (Utah Ct. App. 1997) (citation and internal quotation marks

omitted). Kunej has not introduced evidence that the ALJ had any direct personal or financial interest in the outcome of the litigation, or any other interest that is not indirect or speculative. *See id.* at 196. Moreover, there is no evidence of impropriety or actual bias on the part of the ALJ. *See In re Affidavit of Bias*, 947 P.2d at 1154 ("[T]he mere fact that a judge decides a case against a party may not be considered in determining bias."). We therefore conclude that the ALJ was not required to disqualify herself, and that the Commission did not err in refusing to vacate the ALJ's decision on that basis.

¶21 Kunej next asserts that the University's counsel committed "prosecutorial misconduct" by referring to certain exhibits, previously admitted during the evidentiary hearing before the ALJ, as "questionable hearsay documents" in the University's response brief to Kunej's motion for review of the ALJ's decision before the Board, thereby violating a stipulation to admit the evidence at the hearing. Because the alleged misconduct occurred in the University's response brief to the Board, Kunej asserts that he had no opportunity to object to the Commission, and now raises this issue for the first time in this judicial review proceeding.

¶22 Even if we assume that all of the facts alleged by Kunej to support this claim are true, Kunej cannot succeed on a prosecutorial misconduct claim because counsel for the University are not prosecutors. The claim of prosecutorial misconduct is premised upon the unique role of the prosecutor in a criminal case and is inapplicable to a civil action. *See State v. Todd*, 2007 UT App 349, ¶ 17, 173 P.3d 170 ("In our judicial system, 'the prosecution's responsibility is that of a minister of justice and not simply that of an advocate' . . . ." (quoting *State v. Hay*, 859 P.2d 1, 7 (Utah 1993))); *see also* Utah R. Prof'l Conduct 3.8 & cmt. 1 (identifying the special responsibilities of a prosecutor). Although Kunej urges this court to apply an "elevated standard of conduct" to the University's counsel as "a representative of the state," we disagree that the role

of defense counsel for a state university in a civil proceeding is sufficiently analogous to that of a prosecutor in a criminal proceeding to warrant such a standard here. We therefore conclude that Kunej's misconduct claim must fail as a matter of law, and we decline to disturb the Commission's decision on that basis.

¶23 Kunej next claims that the University's use of his deposition at the evidentiary hearing violated his due process rights because the taking of the deposition did not comply with the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 30 (governing the taking of oral depositions). "We have consistently held that issues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." *Sullivan v. Utah Bd. of Oil, Gas & Mining*, 2008 UT 44, ¶ 14, 189 P.3d 63 (citation and internal quotation marks omitted). To preserve an issue for judicial review, the issue must be raised "at the administrative level[ so] either the administrative law judge or the Commission could have adjudicated the issue." *Columbia HCA v. Labor Comm'n*, 2011 UT App 210, ¶ 6, 258 P.3d 640 (mem.) (alteration in original) (citations and internal quotation marks omitted). To preserve an issue, appellants must "cit[e] to the record showing that the issue was preserved in the trial court." Utah R. App. P. 24(a)(5)(A); *see Darvish v. Labor Comm'n*, 2012 UT App 68, ¶ 25, 273 P.3d 953 ("[Rule 24(a)(5)(A)] applies to review of the orders of administrative agencies.").

¶24 Because Kunej has failed to provide a transcript of the evidentiary hearing pursuant to rule 11 of the Utah Rules of Appellate Procedure, *see supra* ¶¶ 11–12, he has not demonstrated that this claim was preserved on the record before this court. Therefore we decline to disturb the Commission's decision on this basis.

¶25 Kunej's final claim is that the Antidiscrimination and Labor Division abused its discretion in making its initial determination of

"No Reasonable Cause," thereby setting an unfavorable precedent for subsequent proceedings. However, Kunej did not preserve this argument for review by presenting it to the ALJ or to the Board. *See Sullivan*, 2008 UT 44, ¶ 14; *Columbia HCA*, 2011 UT App 210, ¶ 6. Because this Kunej did not preserve this issue by raising it at the administrative level, we do not review it further.

¶26    Because we conclude that the Commission did not err in dismissing Kunej's discrimination claim, and Kunej has failed to demonstrate that bias or other claimed procedural irregularities affected the proceedings, we decline to disturb the Commission's decision.

———————